Mr. Thomas, excuse me, I'm sorry, Linda A. Johnson and on behalf of the, uh, of the Academy, Mr. Robert Davidson. Good afternoon, counsel. Good afternoon. Ms. Johnson, are you comfortable standing? Yes. Okay, thank you. Your Honor, following a jury trial, my client, Paul Grygo, was convicted of two counts of aggravated murder that followed a, based on a confrontation with the police in September of 2004. Was it an attempt, first degree murder? Yes. Um, we raised basically two issues on fitness and two issues on sanity, and I'd like to focus my argument today on fitness, although I'd be happy to discuss sanity as well. I think that the fitness issue is actually the determinative issue in this case. Um, the trial judge found a bonafide doubt of Mr. Grygo's fitness, and Mr. Grygo told his attorney that he wanted to have a jury determine his fitness, and his attorney and the trial judge decided right in front of him that no, no, you don't get to decide that. Did the trial judge say, you're correct, defendant, it is your call, not the defense attorney's call? She said, I agree to something. I'm sure Your Honors have noticed in reading records over the years that sometimes a court reporter will have different people's statements out of order. She can't catch when people talk fast, so I'm not sure. Well, we don't know that this was out of order. No, we don't know that, absolutely. No, we don't, and I mean, without any evidence that was out of order, I think you have to take the statement in context of what was said. And she said, I agree. Right, but then doesn't there have to be, there was also part of this colloquy, a discussion of the fact that the defendant was going to or had to discuss the case, or the matter, with his attorney, because there was an indication that it hadn't been discussed. Isn't that correct? That's exactly correct. And then once the matter was discussed, there was still no formal demand, and there had to be a demand for a jury. I believe that it was formally demanded, as formally as it needs to be. It wasn't formal in the sense that it was in writing. When the defendant said, I want a jury, his attorney didn't back him up. His attorney said, my client wants a jury. I'm sorry. No, he said, I think it's my client does, but I think it's my decision. And the defendant said, no, it's not. I thought it was mine. The judge says, I agree. Then they go into talk, and then they take a break, or they break off, and it's time to talk. Then when they come back, was there ever a demand for a jury? That was the demand that I'm relying on. I believe that when the attorney said, my client wants, I don't think that there was any chance that it could have been made any clearer, because the defendant was likely told by his attorney and the judge that it's the attorney's decision. But then when they walk away, and there's a discussion off the record, and some time passes, and then they come back, couldn't one make a reasonable inference that the discussion was had and that the defendant, in fact, was going with a judge as opposed to a jury? I think a reasonable inference could be that the defendant was convinced by his attorney that he and the judge knew the law better than he, a tool maker, knew it. And that if they told him he didn't have the right to choose a jury, that he believed them. I mean, they're two legal experts. Well, again, we don't know that either, for a fact. Right, exactly. And we don't know what the discussion was between the defendant and the attorney. Do you know what date that discussion was? I have it in my notes somewhere. Didn't they set it down over to March 16th from a previous time? It was, I think, February 5th. So there was a lot of time between his waiver. If you're calling that a waiver, there were several months between the waiver and the trial. I'm not calling it a waiver. Oh. Am I? I'm sorry. You can call it a waiver. I correct myself. His decision or his demand to proceed by way of jury. You're calling it a jury demand, I think is what you said. Yes. So several months have passed since he made that alleged jury demand. Then they come back and they proceed by bench trial. But this is, again, part of his illness, as found by the experts, that he had become paranoid. And this was another proof that his attorney wasn't acting on his behalf. He wanted something in his attorney. His attorney knew he wanted a jury, right? That's not questioned. His attorney said he does. He knew at that date. At that date in February. Yes, when they were appearing to discuss the matter. How about the date in March? I presume everybody knew the same thing they knew before. I don't know. I have no other facts. I know that. So that's my point. So we have a date in February, then we go out to March 16th. What happened in between then? I think that this was part of when Mr. Greco was shutting down. He was so paranoid he was trusting in God to handle everything. He had never been able to communicate with his attorney. That was apparently the extent of their communication. And even then, his trial counsel said that he and Mr. Greco had already talked about this. Whereas the words between them that are on the record suggest they had never talked about waiving a jury for fitness. Does the court have to take a jury waiver in this type of case? Or is it the type of case where a party has to make a jury demand? In other words, it's different than a criminal case where the jury must be waived. He has the right, and I think as long as he's voiced the right. I don't know of any case law that says pains is my primary case for this. I think it says that either the state or the defendant or the judge can demand or obtain a demand. Let's see if it's a demand. It's a demand of a jury trial or a combination. So no matter what happens, a demand has to be made. And who has the burden of proof relative to making a demand for a jury trial in this type of case? I can't imagine that it would be anyone but the defendant that he demanded something that he wasn't given. The state has a right to demand a jury trial as well, don't they? Yes. On fitness? I think they do, but I don't know. As I recall. I think there's a statement in the record that the state didn't want a jury trial. Yeah, and he also, the attorney told the judge the first day that we're talking about in March that around the day they were discussing whether it was going to be a trial, that it's going to be a stipulated bench trial. He just stated that as a fact. It'll be a stipulated bench trial. So apparently the matter had been decided at that point that no one else questioned it any further. And this ties into the waiver issue that counsel brought up that you can't really expect somebody's attorney to put into a post-trial motion something that he opposed that he didn't think was the law. And that he believed that he said, no, it's my decision. So he didn't think a mistake had been made. He wasn't going to include that in a post-trial motion for his client. Then when they appeared March 16 for the hearing, he never brought up again his demand for jury, did he? No, he didn't. But I don't think there's any requirement for it to be a formal and written demand. I think he expressed his attorney on his behalf said my client wants a jury. I think that's enough right there. You want a jury. It's not like. But then when the case proceeds by way of bench, could he not say, hey, wait a minute, I want a jury? Well, he'd already presumably been told. I mean, that's that's the reasonable explanation that he'd been told. You're not you don't get when I decide. I'm your attorney. You only get to decide whether to testify to me. That's a big leap for us to make. I don't think it's a leap because he's the last thing we heard was attorneys saying, I'll talk to him. Judge, I'll take care of it. Don't worry. I'll explain everything to him. And so he explained to him. No, I decide if we get a jury or not. And I don't think that I mean, that was his honest belief. I don't think that he was suggesting anything he thought was wrong. But I think that counsel believed that it was his decision to make. Like most decisions are a trial. Well, the court's statement that he agreed with the defendant that at least it was his or there. Some discussion was in order was certainly part of the record, too. But at any rate, why don't we move on for a minute to the fitness hearing itself and the judge's conclusion? Didn't Dr. Murray's opinion that the defendant was unfit really boil down to the defendant's disagreement with his attorney's decision to present an insanity defense instead of a reasonable doubt defense? That is a difference in strategy. I believe that that is what Judge Creswell came to the same conclusion. But I believe that the expert himself should have been allowed to boil down his own opinion. And he said that his paranoia and his irrational thinking had so affected him that he was not fit. He couldn't communicate with his attorney. His attorney said that and the experts said that. There was no other evidence that he could communicate and assist in his defense. So, therefore, the judge's decision was against the manifest way to the evidence. Well, his attorney didn't exactly say he couldn't communicate. I think his attorney said that he disagreed with certainly with regard to presenting an insanity defense. And that he denied whether or not he was guilty or not guilty. Right. I'm sorry. I didn't. His attorney said that he couldn't. He was having difficulty communicating effectively with his client. Are you saying that he didn't say that? I can look for that. I guess my that was why he requested the hearing in the first place was that he was having trouble communicating with his client. His client, because he was so paranoid, didn't believe anything he was saying. And, I mean, that was how everything started when he said that, that he wasn't able to communicate. So how did the trial court come to the conclusion then that counsel and the defendant differed over matters of trial strategy? I mean, there had to have been something in the record that the trial court relied on to make that conclusion. She decided that her common sense, and she had a brief discussion with the prosecutor. The prosecutor said that it gave his opinion that it could be just a matter of disagreeing with counsel. But he's a lawyer, not a psychologist. At the hearing, the party stipulated to Dr. Murray's report. Exactly. There was nothing else. And the only thing they didn't stipulate to was Dr. Murray's opinion. Well, I believe his opinion was in his report. But, yes, that's the ultimate opinion. The state did not stipulate to the ultimate opinion of Dr. Murray. Yes. Obviously. Right. We wouldn't be arguing at this point. But it's uncontroverted that the defendant was paranoid. Is that correct? Yes. And it's uncontroverted that the defendant could not cooperate with his attorney from the factual standpoint. There's no other testimony. No, there was none. No, the defendant didn't testify. The state didn't have an expert. The only evidence came from Dr. Murray's witness. Based on that evidence, the court came to the conclusion that it had ignored the opinion of Dr. Murray, that the defendant could not cooperate with his attorney, and instead found that the defendant could cooperate with his attorney and was able to understand what was happening at the hearing. Yes, which is remarkably similar to what the judge had done in a previous case that I cited in my brief, in Lucas, where the judge interpreted psychological information into her own understanding of what that information meant rather than letting an expert interpret his own data. And this court pointed out that the judge doesn't have unbridled authority, that she has to consider, or he or she has to consider the preponderance of the evidence and not just use common sense, what she thinks the person would do. Because he, as was discussed with the other experts for malingering tests, that sometimes they'll actually have tests that sort of trick the person being tested because they want to make sure that they're getting to the truth when they conduct these various tests. And the expert knows what he's doing when he conducts these tests and what his results mean. He's learned how to interpret the data. And, you know, with all due respect, a judge would not have had the same training and background. And I think this relates to the first issue of fitness, because I think a jury would have said, well, he's unfit. Why are we here? Who had the burden of proving it? I'm sorry? Who had the burden of proving it? The state has the burden of proving it. And the judge said that the burden had been met even though the state had done virtually nothing in this case. But now Dr. Murray had spoken with and interviewed the defendant, and I guess it was through Dr. Murray's discussions that he concluded in his report that the defendant, or he included in his report a difference of opinion with regard to what the attorney was going to prove and what the defendant wanted proved. And apparently Dr. Murray said that the defendant wanted his attorney to prove, let's see. The missing bullet. Right. Yes, he was convinced that that was the key to his defense. And under the circumstances of this case, I view it as another example of his inability to assist in his lack of understanding. He was shooting at a number of armed police officers. Right. A single bullet that was later found doesn't really establish that he's not guilty of attempted murder. Didn't Dr. Goldstein testify for the state in this case as well? Dr. Goldstein testified at trial. She did not testify in common. And that was relating to sanity and insanity. Right. Your time is up, but you'll have some additional time on rebuttal to cover the points. I know we've spent a lot of time on this fitness issue, but you'll have some additional time. Thank you very much. Thank you. Okay. We've got Mr. Davison. Thank you, ma'am. Good afternoon, Your Honor. May it please the Court. I'll, if it's acceptable to the Court, I'll give you the same points that counsel did. As to point one, it is clear that there is a statutory right on the basis of the statute of limitations, on behalf of the defendant or the state, to demand a jury trial. Of course, the Court can also decide on a jury trial. The case law is clear. It's not a constitutional right. It's a statutory right. It does not involve a waiver if the statute says a demand. And I think the record in this case is clear that there simply was no demand. At best, the record is vague. And that's why I think it's important that when we look at the lack of raising this issue in the post-trial motion, could not have clarified exactly what the judge ruled, why the judge ruled it, what happened between this hearing on February 5th and the hearing in March. But let me turn to the transcript. This is page 460 of the transcript. The defense counsel says the state indicated they are not going to proceed by jury. Quite frankly, I don't wish to either. And the defendant then says, why not? And he's asking his own lawyer, why not? Why don't you want to go with the jury? The defense lawyer then says, my client does, but I think it's my decision. So don't stop there with that statement. No, he was just turning the page, I think, Judge Bowman. No, I'm going on. What I'm saying is stop at that point. My client does. What does that mean? If that was the end of the statement, I think it certainly suggests that his client wants a jury. But when you read what occurs next, I think because first of all, I think the statement before that raises a question. When the lawyer says, you answered my question. I'm interested in that. But the lawyer says, I don't wish a jury. And the defendant says, why not? I think what that means to me is that the defendant is surprised that he was not even aware that his lawyer was going to say that. And I think that is solidified when you go on. Because once the lawyer says, but I think it's my decision, then the defendant says, no, it's not. I thought it was mine. And then the judge says, I agree. Now, the state's position is the judge is agreeing with the defense counsel. Well, you can take the position that the judge is agreeing with the defendant's position that I thought it was mine. I agree. That's the position in here. And then the next statement is even more revealing. Defense counsel says, and I have discussed this briefly with my client. And the defendant says, no, you haven't. I think this goes back to this first remark, why not, that shows that the defendant hadn't even discussed this with his trial counsel. So when the trial counsel says my client does want the jury, the client himself is disputing the fact that he even discussed this with him. And then even when it goes further, the defense counsel says, but I will discuss it further with him, judge. Then, of course, I will discuss it further. Okay. And then from that point until the fitness hearing is held, there is no demand. There is simply no demand in this record whatsoever. And like I point out in our brief, if this point had been raised in the post-trial motion, and I want to avoid whether it's a waiver, a forfeiture, or a procedural default. But if it was raised in a post-trial motion, the defense lawyer or the defendant or whoever could have said, judge, you erroneously felt it was the lawyer's decision, et cetera. But it wasn't raised. So I think the record simply does not show, and it is the appellate's burden, as we all know, to have a sufficient record of appeal to reverse. Point two, if there's no more questions about point one. I argue two pertains to the fitness hearing itself. The only evidence was the fitness report by Dr. Murray. But the judge did ask defense counsel about how his client couldn't cooperate. So that's there, and I'll get to that in a moment if I could. The report of Dr. Murray concludes, and this is the reason for his decision, because of a paranoid thought process and his inability to cooperate and communicate effectively with his defense attorney. I point out in our brief that that latter statement, his inability to cooperate and communicate with his defense attorney, is at best speculation because he did not talk to the defense attorney about this. He did not even talk to the defendant about effective communication. He talked to the defendant, but not about that. I'm surprised that the defendant challenges that statement because cases that I cite and cases even the state cites or the defendant cites are very clear. For example, the Contorno case by this court in 2001. A trial court must analyze and evaluate the basis for an expert's opinion instead of merely relying on the expert's ultimate opinion. So that the value of the expert's conclusion of lack of ability to effectively communicate is not very strong except for the factual basis. When we look at the factual basis, when we look at Dr. Murray's reports, what I'm going to say is all from Dr. Murray's report. One, the verbal IQ of the defendant was 111. His performance IQ was 95, well above average. Two, while in the county jail, this was from September 2004 until November 2005, he was evaluated on a monthly basis by a psychiatrist. And no medication was ever prescribed for him. Three, the defendant, this is a quote, communicated an understanding of the warning Dr. Murray gave him and a willingness to proceed. So he certainly could communicate understandably with Dr. Murray. Four, the defendant's statements to Dr. Murray regarding his time in jail was, as Dr. Murray says, quote, consistent with the records. And in other words, his memory was absolutely accurate. Five, the defendant easily identified his attorney and indicated that his mother located the attorney for him. Again, memory, knowledge. Six, he was aware of the nature of the pending charges, clearly stating attempt murder, three counts, 12 counts in all. Seven, he was aware not only of the nature of the charges but the severity of the charges. Eight, he was aware of the nature of the court proceedings. Nine, he was aware of the role function of the judge. For example, he was aware that the judge would decide on a sentence and what the jury would hear. Ten, he was aware of the role function of the prosecuting attorney. Eleven, he described the role and makeup of a jury in correct terms. Twelve, he was aware of the role function of the courtroom personnel. Thirteen, he was generally aware of the plea agreement, and this is a quote, generally aware of the plea agreement process and said he was, quote, not taking a plea. Fourteen, he was aware that he had talked with his attorney several times. He told that to Dr. Murray. Defense counsel mentioned there's no showing he even talked to his lawyer. Well, it's in Dr. Murray's report that he did several times. Fifteen, the overall report of Dr. Murray shows that the defendant demonstrated a sound and accurate memory. Sixteen, Dr. Murray never stated in his report and never even suggested that the defendant was unable to communicate or cooperate with him, Dr. Murray. And seventeen, and lastly, if we go back to the transcript that I referred to in R001, it clearly shows the defendant knew exactly what was going on and was not shy about raising issues that he felt needed to be raised. The fact that the defendant was paranoid and then the language Dr. Murray used, he was paranoid, very suspicious of his attorney, et cetera, et cetera. And I suggest that based upon Dr. Murray's own report, that's not irrational. It may be wrong, but when you look at it, first of all, as counsel mentioned, he claimed there was a missing bullet. Dr. Murray referred to this alleged missing bullet that the defendant raised three or four times in his report. And the defendant said he wanted his lawyer to find out where that bullet was. The importance of the bullet was the defendant's claim at the beginning that one of the officers shot another officer. And the missing bullet was that officer's bullet. And so that's the conspiracy. Well, Dr. Murray doesn't mention in his report or acknowledge that, in fact, there was a missing bullet. A defense counsel acknowledged that several times in the record. I can give you a couple of sites now, record page 482 and during closing argument, 2076 through 78. So there was, in fact, a missing bullet. That wasn't a delusion on the defendant's part. That was a fact. And so it certainly isn't a delusion for him to suggest that he wanted his lawyer to investigate that. And his belief was it wasn't investigated. Two, that the defendant also complained to Dr. Murray that his attorney did not speak to any of the witnesses for over a year. Not disputed. No one contended that that's not true. In fact, the defendant's mental faculties was such that he was smart enough to know why the witnesses might be important. He claimed the policeman kicked his door in. The policeman claimed he opened the door and stuck a gun out. He wanted his lawyer to talk to the neighbors who may have heard it and to a locksmith. That might be relevant to say if the door was broken in and opened. So that shows some type of mental capacity on his part. And the statement that his lawyer didn't talk to him for years has never been disputed. The next thing, he said his sister told him that his lawyer told the sister that he was not going to handle the defendant's appeal. We're talking about a man in jail, a lay person in jail. His lawyer, he thinks, is talking about having an appeal. And the defender was smart enough to know, quote, you appeal it if you lose. So his view was his lawyer was already talking about losing his case before it was tried. Again, I suggest this is not a person who has no mental faculties and is unfit. Next, Dr. Murray said that the defendant was upset with his lawyer because his attorney wanted him to admit it and admit that I was, as he says, a crazy. Well, we know this is true because, in fact, there was an insanity defense in the trial. That's exactly what his lawyer planned to pursue and did pursue. But perhaps more important, the defendant did, in fact, cooperate with his attorney during the trial. The insanity defense was raised. Dr. Fletcher was the defense witness who raised it. Dr. Fletcher, his testimony was based in large part upon his in-person interview with the defendant. So the defendant did, in fact, sit down, participated in an evaluation with Dr. Fletcher that led to the insanity defense at trial. So, in fact, he did do it. The last point is, on this, is that defense counsel did not mention, he raised the fitness issue and then the new trial motion saying the judge ended up finding he was fit. Defense counsel did not mention one instance in which he could not communicate with his client or how his client didn't communicate, was uncooperative during trial. Now, defense counsel argues that he could have thought this was futile and why raise it. But the purpose of a post-trial motion is not to get a trial judge to change his or her mind but also to preserve the record for appeal. But I think if we would presume that a lawyer acts zealously on behalf of his or her client, and certainly if there's a basis in the record for the lawyer to believe that his lawyer did not cooperate, this would be the first things a trial lawyer would if they tell the judge at the post-trial hearing. So I think based upon all these things, the judge's decision is correct. The judge did ask trial counsel during the hearing for some, you know, what's the problem? How is he unable to assist in his defense? And as the court referred to before, it all goes back to him thinking there's this conspiracy. He wants, he doesn't want him to plead guilty. He won't accept what I tell him with regard to the physical evidence. He says they covered it up. That bullet is set somewhere. That bullet is missing. And there is a bullet that's missing. And the defendant said they just want me to see me unfit. They just want me to get medicated. Isn't that thinking consistent with the paranoid problem? It is. Yes, it is consistent with being paranoid. I'm not disputing the fact that he certainly was paranoid and suspicious, didn't trust his lawyer. But I think it wasn't an irrational thing, that it was based upon specific things that his lawyer did and didn't do. But even more important perhaps, he then did cooperate with counsel. He did sit down with a psychiatrist or a psychologist, excuse me, and he did fully cooperate in the insanity defense. And there's no indication in this record that because of the defendant's conduct, actions, non-actions, that the insanity defense was in any way impaired. I'm sorry. No, go ahead. I'm sorry. All right. Also, was there not in Dr. Murray's report some additional information that you hadn't mentioned that might have provided a factual basis for the trial judge's conclusion on this part? Where when Dr. Murray reports one question further, and I'm quoting, about his perception of his attorney, he, meaning the defendant, stated, quote, I think I'm innocent. He's saying I'm guilty. Quote, that's the inner quote. Mr. Griego further stated, quote, I have my hope in God. You believe in God. I think he's going to come through for me. He further indicated because of his faith in God, he was not going to request another attorney. And then he goes on, that is, Dr. Murray goes on to describe the defendant's awareness of pending charges, et cetera, which you had summarized. But there is that additional statement in Dr. Murray's report that really focuses on the difference that the defendant had with his attorney as to how the case was going to be handled. That's exactly right. I think he was concerned about not talking to witnesses, that missing bullet. He didn't want to admit he's crazy, as he says, et cetera. And one more thing I should say. He mentioned he thought his lawyer was being paid off, which, of course, is a very extreme statement. But, again, it was his rationale was he's heard this lawyer's compliment, but his lawyer, from what he told his sister, he wants me to lose. So what's left? You know, so he did have that train of thought. So I see my time is up. And if there's no more questions. Thank you. Thank you very much. Would you address your argument about Dr. Fletcher's rebuttal testimony and how you think the defendant was denied fair trial? His what testimony, I'm sorry? The rebuttal testimony. Oh, actually, I'm not as prepared on that as I would like to be, because there is he didn't do an offer of proof at trial. And because I figured that this would not come up in a new trial. But I do think that given the order of the case, it was just too early to expect this defense witness to include impeachment of the state's witness who hadn't testified yet. You can't really impeach somebody until they've actually testified. You could comment on their case, on their findings, on their report, and what tests they conducted. But you can't actually impeach them until a jury has heard what they said. It just wouldn't have made sense to a jury. But the trial judge did allow him to testify. He was allowed to testify. And indeed allowed the crucial question, I think, on the premorbid IQ as well. So the trial judge ruled on various objections that were made, but didn't exclude all the testimony. And, in fact, allowed the testimony regarding the difference of opinion on premorbid IQ. And I agree. And as I said, there is a dearth of information here. I'm sorry. It was limited. It was very limited. And I think that there were points that counsel wanted to make with his expert. And that he was saving until those things had been said by the expert so that he could get into them. Unfortunately, I don't know exactly what else Dr. Fletcher would have testified to. I did want to point out that one of the points my opponent made was that counsel didn't raise the first issue in the trial court. So it should be waived. But counsel didn't know there was any confusion. He didn't know that everybody wasn't following what was happening. He didn't know that I, at least, am confused about the I agree when it actually happened and what people knew. And that's he thought he was right. So he didn't put anything in the post-trial motion. Counsel or defendant? Counsel didn't. I don't know. I think defendant probably thought his counsel was right, too, because he told him he was right and the judge agreed with him. So why wouldn't he think his attorney was right? The attorney makes the decision. Oh, okay. If it's up to your attorney and your attorney's made the decision, then what you think doesn't really matter. So you're saying that what the trial court said was agreeing with the defense lawyer, not agreeing with your client? Yeah. I mean, that was my point about things might have been out of order. And I agree. The record doesn't support me. And I understand your point with that, Your Honor. Isn't there a presumption that the trial court knows what the law is? Are we talking about the defense's demand for jury trial? There is a presumption, but in my reading of the record, I think that that presumption can't be followed here because it shows that she didn't know that this was the law, that the defendant could pick his own jury. I mean, the judge either said I agreed to something, which might have been that the attorney gets to decide, or it might have been you're right, you do get to decide, but it's just not that clear, as you pointed out earlier. On another point, you argue that Dr. Goldstein's testimony describing and relying on these test results is really testimonial hearsay. Doesn't this really fit better as facts and circumstances permitted under Wilson to explain the basis for the expert's opinion? And therefore, since this information is not being offered to prove the truth of the underlying matters, it isn't hearsay? I think that the Wilson line of cases is a problem for my argument, definitely. I also believe that the Melendez-Diaz case is going to affect the way things are looked at because they took three or four affidavits and said that that was testimonial hearsay and that was improperly admitted without allowing the defendant to cross-examine. Does the Lovejoy confront the Crawford issue? Confront the what? The Crawford issue. The Lovejoy case, didn't that? It did, but it didn't get into Melendez because it made the decision that, as you pointed out, that it was just something that she relied on. But there's another case called Goldstein. It's New York v. Goldstein, and they pointed out that when a statement is offered to shed light on an expert's opinion, it's not meaningful in this context. And the defendant in that case was allowed to tell the jury something the witnesses said, and the defendant had no chance to cross-examine. I would also just briefly please point out that the student technician here provided the state's expert with her behavioral observations, and she performed testing, which included feedback to show how that would change the way Mr. Grego reacted. And the purpose of all of these should have been something that the defendant could cross-examine. The defendant should have been able to establish her credentials. She was not an expert. She was not an expert as far as we know in any field. She was a graduate student. I mean, she was educated. But the Wilson v. Clark said the key element in applying Federal Rule 703 is whether the information on which the expert bases his opinion is of a type that is reliable. But they're all standardized objective tests. They aren't objective tests. They're standardized tests, but clearly if she had to report how fast somebody tapped their finger and what her behavioral observations, and she didn't explain that further, but that was part of it. And we don't know exactly what those behavioral observations were. The equipment explored at trial and had she been presented. Are there any more questions? Thank you. Thank you very much, counsel. The court will take the matter under advisement and render a decision in due course. The court stands adjourned for the day. Thank you.